<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

```
RONNIE SUBER,                      )
BONGAI MHLOYI, and                 )
JEREMIAH MHLOYI,                   )
  Individually, and               )
  together doing                  )
  business as "JB'S WEB",         )
                                   )
              Plaintiff            )      Civil Action
                                   )      No. 10-cv-03156
         vs.                       )
                                   )
JON GUINTA;                        )
OFFICER WRIGHT;                    )
OFFICER KEUCH;                     )
OFFICER INGEMIE;                   )
OFFICER MILLER;                    )
OFFICER SIMPKINS; and              )
THE CITY OF COATESVILLE,           )

              Defendants
```

*   *   *

APPEARANCES:

> DON BAILEY, ESQUIRE
>     On behalf of Plaintiffs
>
> GARY H. DADAMO, ESQUIRE
>     On behalf of Defendants, Officer Ryan L. Wright,
>     Officer Robert Keuch, Officer Jeffrey J. Ingemie,
>     Officer Shannon N. Miller, Officer Claude
>     Simpkins, and The City of Coatesville; and
>     On behalf of former Defendant Officer James A.
>     Pinto, III

*   *   *

## **O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

> This matter is before the court on Defendants', Officer

James A. Pinto, III, Officer Ryan L. Wright, Officer Robert

Keuch, Officer Jeffrey J. Ingemie, Officer Shannon N. Miller, Officer Claude Simpkins, and The City of Coatesville[1] Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Rule 12(b)(6), which motion to dismiss was filed by Moving Defendants together with their brief in support on October 17, 2011.  Plaintiffs'[2] Brief in Opposition to Motion of Defendants Pinto, Wright, Keuch, Ingemie, Shannon, Miller, Simpkins, and The City of Coatesville to Dismiss Plaintiffs' Second Amended Complaint was filed on November 2, 2011.

## SUMMARY OF DECISION

For the reasons articulated in this Opinion, I grant in part, and deny in part, Moving Defendants' motion to dismiss plaintiffs' Second Amended Complaint.

The within motion to dismiss is granted to the extent it seeks to dismiss the Mhloyi Plaintiffs' claims in Count II of the Second Amended Complaint against defendant Officers Keuch, Ingemie, Miller, Simpkins and defendant The City of Coatesville for alleged violation of plaintiffs' First and Fourth Amendment rights.

---

[1]     In this Opinion, I will refer to these individual defendants together as the "defendant Officers", and together with The City of Coatesville  as the "Moving Defendants".

[2]     As discussed subsequently in this Opinion, the Moving Defendants only seek to dismiss Count II of the Second Amended Complaint, which asserts claims by plaintiffs Bongai Mhloyi and Jeremiah Mhloyi only.  In this Opinion, I will refer to plaintiffs Bongai Mhloyi and Jeremiah Mhloyi as the "Mhloyis" or the "Mhloyi Plaintiffs".

In addition, motion is granted to the extent it seeks to dismiss the Mhloyi Plaintiffs' equal protection conspiracy claim against the Moving Defendants under 42 U.S.C. § 1985.

The motion to dismiss is also granted to the extent that it seeks to dismiss claims in Count II against defendant-Officer Wright.  The motion to dismiss is denied in all other respects.

As a result of the foregoing, the only remaining claims in the Second Amended Complaint are (1) all of the claims of plaintiff Ronnie Suber in Count I against defendant Jon Guinta for violation of plaintiff's First, Fourth, and Fourteenth Amendment rights, brought pursuant to 42 U.S.C. §§ 1983 and 1985; and (2) the claims of plaintiffs Bongai Mhloyi and Jeremiah Mhloyi against defendant Officers Keuch, Ingemie, Miller and Simpkins, and defendant The City of Coatesville for violation of plaintiffs' Fourteenth Amendment rights to equal protection of the law, brought pursuant to 42 U.S.C. § 1983.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4).

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims allegedly occurred

in the City of Coatesville, Chester County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiffs Ronnie Suber, Bongai Mhloyi and Jeremiah Mhloyi initiated this action on June 30, 2010 by filing a two-count Complaint against defendant Officers James A. Pinto, III, Ryan L. Wright, Robert Keuch, Jeffrey J. Ingemie, Shannon N. Miller and Claude Simpkins; defendant The City of Coatesville; and one defendant John Doe.

Defendant Officers Pinto, Wright, Keuch, Ingemie, Miller, Simpkins and The City of Coatesville filed a motion to dismiss plaintiffs' Complaint on August 26, 2010.  In response, plaintiffs filed an Amended Complaint on September 17, 2010, which omitted defendant John Doe and replaced him with defendant Jon Guinta.

Defendant Officers Pinto, Wright, Keuch, Ingemie, Miller, and Simpkins, and The City of Coatesville, filed a motion to dismiss the Amended Complaint or, alternatively, for a more definite statement concerning Count II of the Amended Complaint on September 23, 2010.

By Order dated August 8, 2011 and filed August 9, 2011, I granted the alternative motion for a more definite statement. Plaintiffs filed their Second Amended Complaint on October 3, 2010, and re-filed the same document on October 12, 2011.  Offi-

cer Pinto was not named as a defendant in the Second Amended Complaint and has, therefore, been terminated from this action.[3]

On October 17, 2011 defendant Officers Wright, Keuch, Ingemie, Miller, Simpkins, Pinto (despite having been omitted from the Second Amended Complaint), and The City of Coatesville filed the motion to dismiss plaintiffs' Second Amended Complaint which is now before the court.  Plaintiffs filed their response in opposition to that motion on November 2, 2011.  Hence this Opinion.

## Plaintiffs' Claims

Count I of the Second Amended Complaint asserts several constitutional claims by plaintiff Ronnie Suber against defendant Jon Guinta only. Defendant Guinta answered the Second Amended Complaint on June 13, 2012.  Accordingly, Count I is not challenged by Moving Defendants' motion.

Count II of the Second Amended Complaint asserts constitutional claims by the Mhloyi Plaintiffs against defendant Officers and defendant The City of Coatesville pursuant to 42 U.S.C. § 1983 alleging violations of their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  The Mhloyi Plaintiffs also assert an equal

---

[3]     Officer Pinto joined defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. However, because he is no longer a named defendant because he was terminated from this action on October 12, 2011 after the Second Amended Complaint (which did not include him as a defendant) was filed, he is not a party and, therefore, cannot move to dismiss.

protection conspiracy claim in Count II pursuant to 42 U.S.C.
§ 1985.  Finally, the Mhloyi Plaintiffs assert an equal
protection Monell[4] claim against defendant The City of
Coatesville.

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil
Procedure 12(b)(6) for "failure to state a claim upon which
relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6)
motion requires the court to examine the sufficiency of the
complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102,
2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by
Bell Atlantic Corporation v. Twombly, 550 U.S. 544,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court
relies on the complaint, attached exhibits, and matters of public
record, including other judicial proceedings.  Sands v.
McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil
Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2), which requires "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require

---

[4]   Monell v. Department of Social Services of the City of New York,
436 U.S. 658, 98 S.Ct 2018, 56 L.Ed.2d 611 (1978).

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[5]

In determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory or bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that

---

[5]     The opinion of the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the  "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

          This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and that the plaintiff is entitled to relief.  <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

          As the Supreme Court explained in <u>Iqbal</u>, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

discovery will reveal evidence of the necessary element[s]." <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotation omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. <u>Fowler</u>, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211 (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." <u>Iqbal</u>,556 U.S. at 680, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885 (internal quotations omitted).

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965,
167 L.Ed.2d at 940-941.

## FACTS

Based upon the well-pled averments in Plaintiffs'
Second Amended Complaint, which I must accept as true under the
above standard of review, the pertinent facts are as follows.

Plaintiffs Bongai Mhloyi and Jeremiah Mhloyi ("the
Mhloyis") are African-American citizens who own a bar known as
JB's Web in Coatesville, Pennsylvania. Plaintiff Ronnie Suber is
an African-American citizen who worked at JB's Web at all times
material to this action.[6]

Defendants Officers Ryan Wright, Robert Keuch, Jeffrey
Ingemie, Shannon Miller, and Claude Simpkins are each police
officers of defendant The City of Coatesville.[7]

Unlike the other individual defendants, Jon Guinta is a
law enforcement officer who works for the Chester County Board of
Probation and Parole.[8]

The Mhloyis' bar, JB's Web, "is a black bar owned,
frequented, and run by black persons and is the only such

---

[6]     Second Amended Complaint, ¶ 1.

[7]     <u>Id.</u> at ¶ 11. As discussed above, James Pinto is not named in the
caption or in Count II and therefore is not a part of this lawsuit. Plaintiff
Ronnie Suber and defendant Jon Guinta are named only in Count I and are not
parties to this motion.  Jon Guinta has filed an answer to the claims in Count
I.

[8]     <u>Id.</u> at ¶ 1. Defendant Jon Guinta is only named in Count I and is
not a moving defendant.

establishment in Coatesville."[9]  Coatesville has approximately

five bars.  JB's Web is the only "black bar" in the City of

Coatesville.[10]

From sometime in 2007 through the initiation of this

action on June 30, 2010 plaintiffs have been "consistently

harassed" by defendant Officers, who have issued numerous noise

citations at JB's Web.  Between 2008 and the present, the Mhloyis

and JB's Web have been issued over two dozen citations by

defendant Officers and The City of Coatesville.[11]

Specifically, defendant Ingemie filed at least seven

"incidents and citations" between January 15, 2008 and

September 15, 2008.  Officer Ingemie also filed some unspecified

number of "noise violations" in 2007.[12]  Officer Ingemie also

placed JB's Web on the "nuisance bar list" in 2007 and 2008.[13]

Defendant Wright filed another "noise violation" on

April 9, 2008.[14] Officer Pinto filed a citation on June 17, 2008

---

[9]     Second Amended Complaint, ¶ 10.

[10]    Id. at ¶¶ 10, 18.

[11]    Id. at ¶¶ 11-13.

[12]    Id. at ¶ 13(a).

[13]    Id.

[14]    Id.

for another noise ordinance violation.[15]  On October 8, 2008
Officer Simpkins filed a nuisance bar claim for "loud noise".[16]
On September 4, 2008 defendant Miller filed a "public drunken-
ness/open bottle violation" for an incident that occurred outside
and away from JB's Web against a person who was never inside the
bar.  This citation was also put on the nuisance bar list.[17]
On November 12, 2008 Officer Keuch filed a citation against the
Mhloyis and JB's Web for an incident which did not occur in the
bar. This citation was also added to the nuisance bar list.[18]

        To the best of plaintiffs' knowledge, all of these
citations were dismissed by the local judiciary.  The Mhloyis
assert that JB's Web has not been declared a nuisance bar.[19]

        Many of these citations for noise violations were
issued despite defendant Officers' knowledge that plaintiffs had
taken every possible step to keep the noise from JB's Web down,
"including documenting the control of their juke boxes to reduce
any sound to an absolute minimum."[20]

_____

        [15]    Second Amended Complaint, ¶ 13(a).  Although Officer Pinto is not
named as a defendant in the Second Amended Complaint, I note, as discussed
later in this Opinion, that the only action allegedly taken by Officer Pinto
in violation of the Mhloyis' constitutional rights occurred outside the
applicable limitations period.

        [16]    Id.

        [17]    Id.

        [18]    Id.

        [19]    Id.

        [20]    Id. at ¶ 15.

-11-

Plaintiffs aver that these citations and noise violations against JB's Web were issued by defendant Officers to carry out the "racist policies of [defendant The City of] Coatesville."[21]  In support of this assertion, plaintiffs aver that they applied for, and were granted, a building permit for work on JB's Web.

After plaintiffs finished the work, the City of Coatesville demanded $500 from plaintiffs for an appeal to the City of Coatesville Zoning Hearing Board.  Plaintiffs paid the fee and have not heard anything from the zoning board since.[22]

Coatesville's "Polish Club" is across the street from JB's Web.  The Coatesville Chief of Police and his assistants drink and socialize at the Polish Club. However, neither the Polish club, nor any other drinking establishment in Coatesville, is "harassed and bullied" by the defendant Officers and the Coatesville Police Department.[23]

On March 13, 2010 a local law enforcement task force, which plaintiffs believe was operating under the auspices of the Pennsylvania Liquor Control Board, conducted a raid on JB's Web. Based on the plaintiffs' information and belief, this raid was

---

[21]     Second Amended Complaint, ¶1.

[22]     Id. at ¶ 16. Plaintiffs state that , to the best of their knowledge, the City of Coatesville does not have a Zoning Hearing Board. Second Amended Compliant, ¶ 17.

[23]     Id. at ¶¶ 18-21.

carried out at the request of the City of Coatesville. The
Chester County Board of Probation and Parole was also involved in
the raid and "was doing a sweep for warrants."[24]

During the March 13, 2010 raid, the patrons of JB's Web
were searched and treated in a disrespectful fashion.  Plaintiffs
aver that this was not a search for any particular person or in
response to any particular crime, but rather was simply a
"generic raid".[25]

Plaintiff Ronnie Suber was standing in the area of the
bar when the raid was executed.  Plaintiff Suber did not behave
disrespectfully or unlawfully toward any of the law enforcement
officers conducting the raid.[26]  However, while Mr. Suber was
standing near the bar, defendant Jon Guinta "brushed past him
strongly pushing him" for no reason.  Mr. Suber responded in a
courteous and polite tone, at a level volume, "Sir[,] you don't
have to push me like that".[27]

Defendant Guinta became immediately confrontational and
ordered plaintiff Suber to turn around.  Defendant Guinta
handcuffed Mr. Suber, and forcibly took him outside the bar.  For
no reasonable or proper law enforcement purpose, defendant Guinta

---

[24]     Second Amended Complaint, ¶¶ 22-23.

[25]     Id. at ¶ 24.

[26]     Id. at ¶ 26.

[27]     Id. at ¶¶ 27-28.

-13-

tightened the handcuffs on Mr. Suber for the purpose of making Mr. Suber suffer pain, which Mr. Suber did.  Mr. Suber asked that his handcuffs be loosened, but his request was denied.[28]

After the raid was over, plaintiff Suber was taken before the leader of "the raiding party."  The leader instructed defendant Guinta that Mr. Suber be released.[29]

## DISCUSSION

Moving Defendants seek to dismiss plaintiffs' section 1983 claims in Count II against defendant Officers and defendant The City of Coatesville ("the City") for violation of the Mhloyis' First, Fourth, and Fourteenth Amendment rights for failure to state a claim upon which relief can be granted.  In addition, Moving Defendants seek to dismiss the Mhloyis' section 1985 equal protection conspiracy claim in Count II on the same basis.

Moving Defendants additionally seek to dismiss the Mhloyis's claims in Counts II against defendant Officers and the City for actions that occurred prior to June 30, 2008 based on the statute of limitations.

---

[28]     Second Amended Complaint, ¶¶ 30-32.

[29]     Id. at ¶¶ 26(b), 33-34.  Plaintiff Suber claims that during defendant Guinta's deposition, Mr. Guinta perjured himself, and falsely alleged that plaintiff Suber struck him frontally.  Plaintiffs assert that they have video footage of the raid that disproves defendant Guinta's deposition testimony.  Id. at ¶¶ 33-34.

Finally, defendants move to dismiss the claims in Count II against defendant Officers based on the theory that the defendant Officers are each entitled to qualified immunity.

<u>Section 1983 Claims</u>

Plaintiffs' constitutional claims in Count II are actionable against defendants through 42 U.S.C. § 1983.  Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights.  <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir. 2000).

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under section 1983, a plaintiff must allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right.  <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008)(<u>quoting</u> <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)).

-15-

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

Plaintiffs aver that each defendant Officer named in Count II was a police officer for the City at all material times. Moving Defendants do not dispute that the defendant Officers acted under color of state law.[30]

As noted above, Moving Defendants seek to dismiss plaintiffs' section 1983 claims in Count II against defendant Officers and the City for violation of plaintiffs' First, Fourth and Fourteenth Amendment rights.

### *First Amendment Retaliation*

To state a First Amendment retaliation claim, a plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action. Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006).

In order to state a claim for retaliation under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a

---

[30]     Second Amended Complaint, ¶ 37.

person of ordinary firmness from exercising his constitutional
rights, and (3) a causal link between the constitutionally
protected conduct and the retaliatory action.  Mitchell v. Horn,
318 F.3d 523, 530 (3d Cir. 2003).

Moving Defendants contend that Mhloyis have not pled
constitutionally protected conduct sufficient to establish a
claim for First Amendment retaliation.  In the alternative,
Moving Defendants argue that, if the Mhloyis did engaged in
protected First Amendment conduct, the Mhloyis fail to plead
facts in the Second Amended Complaint which would support a
reasonable inference that a causal relationship exists between
that conduct and the allegedly-retaliatory conduct of defendant
Officers.

Here, the Second Amended Complaint alleges that
defendant Officers and The City of Coatesville engaged in a
patter of harassment meant to deprive plaintiffs of their "rights
to do business...and associate with their black clientele".[31]

<u>Right to do Business</u>

The First Amendment to the United States Constitution
states that "Congress shall make no law respecting an establish-
ment of religion, or prohibiting the free exercise thereof; or
abridging the freedom of speech, or of the press; or the right of

---

[31]     Second Amended Complaint, ¶ 7.

the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S.Const., amend.I.

The Mhloyis have not provided legal authority, nor am I aware of any, to support their assertion that the First Amendment protects the right to do business generally.[32]  Accordingly, I cannot agree with the Mhloyis' assertion that the operation of their bar, JB's Web, constitutes protected First Amendment activity.

<u>Right to Associate</u>

The Mhloyis also contend that their operation of JB's Web constitutes the exercise of their First Amendment right to associate with persons of their choosing, and is, therefore, constitutionally protected conduct.

The First Amendment "protects two types of association: expressive and intimate.  Generally speaking, expressive association protects the ability of individuals to gather in order to pursue political, social, economic, educational, religious and cultural ends....Intimate association protects the closest and most interdependent of human relationships against state interference."  <u>Schultz v. Wilson</u>, 304 Fed.Appx. 116, 120 (3d Cir. 2008)(internal quotations and citations omitted).

---

[32]     In plaintiffs' brief in opposition, plaintiffs cite <u>Valle v. Stengel</u>, 176 F.2d 697 (3d Cir. 1949), and <u>Allgeyer v. Louisiana</u>, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1987). Neither of these cases discuss or even mention the First Amendment and, therefore, do not support plaintiffs' claim.

"To come within the protection of expressive association, 'a group must engage in some sort of expression, whether it be public or private.' " Id. (quoting Boy Scouts of America and Monmouth Council v. Dale, 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000)).

In Pi Lamba Phi Fraternity, Inc. V. University of Pittsburg, the University of Pittsburgh stripped the fraternity's status as a recognized student organization after some of its members were arrested in a drug raid at the Chapter's fraternity house. 229 F.3d 435, 438 (3d Cir.2000). Pi Lamba Phi brought suit against the University asserting that its members' constitutional right of freedom of association was violated by the university's revocation of the fraternity's status. Id.

The United States Court of Appeals for the Third Circuit stated that in order to be protected, a social group must "engage[] in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance." Id. at 444. The Third Circuit Appeals Court held that the fraternity lacked First Amendment protection because it engaged in merely social activities. Pi Lambda Phi, 229 F.3d at 444.

Here, plaintiffs allege that defendant Officers' conduct prevented them from freely associating with the black clientele of JB's Web.[33] However, the Second Amended Complaint

---

[33]    Second Amended Complaint, ¶ 7.

contains no factual averments which suggest, or support a reasonable inference, that JB's Web and its owners (the Mhloyis), employees (including Mr. Suber), or patrons were engaged in any political, social, economic, educational, religious or cultural ends.[34]

Rather, plaintiffs state that they have a right to "come together in a social environment and consume alcohol in accordance with law."[35]  This activity, however, is merely social and is not protected by the First Amendment right of expressive association.  The activity averred in the Second Amended Complaint -- namely, socializing and drinking alcohol together (and not engaging in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance) -- is not expressive activity constituting expressive association.

In short, plaintiffs' Second Amended Complaint does not allege any activity constituting expressive association.

Intimate association protects the closest and most independent of human relationships against state interference. Id. at 441-42.

---

[34]    The Second Amended Complaint also alleges that defendant Ronnie Suber is a local activist who advocates for racial equality. Second Amended Complaint, ¶ 1. Defendant Suber's activities, however, are not at issue in this motion.

[35]    Plaintiffs' Brief at page 6.

The types of relationships giving rise to this right must be "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Roberts v. United States, 468 U.S. 609, 620, 104 S.Ct. 3244, 3250, 82 L.Ed. 462, 472 (1984).

In the Second Amended Complaint, the Mhloyis allege that they have a right to associate with JB's Web's black clientele.  Plaintiffs claim that JB's Web is the only "black bar" in the City of Coatesville and that the Mhloyis were associating and conducting a business based in part upon their race and their desire, and their customers' desire, to utilize the stream of commerce to associate and come together in a social environment to consume alcohol in accordance with law.

The Mhloyis have not pled facts suggesting that their relationship with the bar's patrons were the type of close independent human relationships described in Roberts, supra, and secured by the First Amendment's protection of the right to intimate association.  In short, the conduct that the Mhloyis have pled as intimate association is simply social and commercial activity.

As described above, the Second Amended Complaint fails to plead facts sufficient to support a reasonable inference that the Mhloyis engaged in any constitutionally protected expressive

or intimate associative conduct.  Such protected activity is necessary to for the Mhloyis to state a First Amendment retaliation claim against the Moving Defendants.  Accordingly, I grant the Moving Defendant's motion and dismiss the Mhloyis' First Amendment retaliation claim from Count II of the Second Amended Complaint.

In my Order dated August 8, 2011 and filed August 9, 2011 granting defendants' motion for a more definite statement concerning Count II, I noted that plaintiffs must address any other deficiencies in the complaint when filing their Second Amended Complaint because they would not be permitted to re-plead for a fourth time.

Consequently, I grant defendants' motion to dismiss plaintiffs' claim for First Amendment retaliation and dismiss that claim with prejudice because plaintiffs were on notice of these deficiencies and did not cure them in the Second Amended Complaint.

### Fourth Amendment

Moving Defendants also seek to dismiss plaintiffs' section 1983 claim against defendant Officers and the City for violation of plaintiffs' Fourth Amendment rights.

The Fourth Amendment guarantees "the rights of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures shall not be violated...."  U.S.CONST. amend.IV.

Moving Defendants contend that the Mhloyis have not pled any facts supporting the inference that the defendant Officers engaged in any search or seizure of the Mhloyis' persons or property.  Moving Defendants are correct in this contention.

Although Moving Defendants have written numerous citations for noise violations concerning the Mhloyis' bar, and the Mhloyis' claim that these citations were issued because of their race, none of the averments in the Second Amended Complaint show, or support a reasonable inference, that the defendant Officers ever searched the Mhloyis or their property or seized anything from them.[36]  Indeed, defendant Jon Guinta is the only defendant alleged to have participated in the March 13, 2010 "generic raid" on JB's Web.

---

[36]    The Mhloyis' Fourth Amendment claim in Count II and argument in their brief in opposition to the within motion to dismiss seems misplaced.  In plaintiffs' brief in opposition to the motion to dismiss, plaintiffs claim that the Fourth Amendment claim should not be dismissed because Ronnie Suber sufficiently pled excessive force, an unlawful arrest, and an unlawful seizure claim against defendant Guinta regarding the events that occurred during the raid on March 13, 2010.  As discussed above, the claims involving plaintiff Suber and defendant Guinta are not at issue in this motion, and the Mhloyis have not pled facts supporting a reasonable inference of any illegal search or seizure by the moving defendant-Officers named in Count II.

For this reason, I grant the Moving Defendants motion and dismiss plaintiffs' section 1983 Fourth Amendment claim from Count II of the Second Amended Complaint with prejudice.[37]

### Fourteenth Amendment Equal Protection

Moving Defendants also seek to dismiss the Mhloyis' section 1983 equal protection claim from Count II.  Under the facts alleged, I conclude that the Mhloyi have sufficiently pled a section 1983 equal protection claim against defendant Officers Wright, Keuch, Ingemie, Miller, and Simpkins, and defendant The City of Coatesville.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S.Const. amend.XIV, § 1.

To state a section 1983 equal protection claim a plaintiff must allege that (1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals. Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).

To avoid dismissal, a plaintiff must allege both protected-class status and differential treatment of similarly

---

[37]   In my August 8, 2011 Order which granted defendants' motion for a more definite statement, I stated that plaintiffs must address any other deficiencies in the complaint when refiling the Second Amended Complaint, or they would not be permitted to re-plead.

situated non-class members.  D'Altilio v. Dover Township,
2007 U.S.Dist. LEXIS 71414, at *26 (M.D.Pa. September 26, 2007)
(Conner, J.)(citing Keenan, 983 F.2d at 465).

        The Mhloyis are African-American citizens,[38] and, as
such, are members of a constitutionally protected class. See
Wilcher v. Postman General, 441 Fed.Appx. 879, 881 (3d Cir.
2011).

        Persons are similarly situated under the Equal
Protection Clause when they are alike "in all relevant aspects."
Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir.
2008)(citing Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326,
2331, 120 L.Ed.2d 1, 12 (1992)).

        To be alike in all relevant aspects does not mean they
must be *identically* situated.  George v. Wilbur Chocolate Co.,
2010 U.S.Dist.LEXIS 41932, at *14 (E.D.Pa. Apr. 28, 2010)
(Golden, J.)(emphasis added).

        Plaintiff is not required to identify in the Complaint
specific instances where others have been treated differently.
Tomino v. City of Bethlehem, 2010 U.S.Dist. LEXIS 32221, at *36
(E.D.Pa. March 31, 2010)(Gardner, J.)(citing Phillips v. County
of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008)).  Rather, a
general allegation that plaintiff has been treated differently

---

[38]     Second Amended Complaint, ¶ 1.

from others similarly situated will suffice.  <u>Tomino</u>, 2010

U.S.Dist. LEXIS 32221, at *36.

Plaintiffs contend that they have stated a claim by
alleging that other "white" bars in Coatesville are treated
differently.  Specifically, the Mhloyi aver that JB's Web is the
only black bar in Coatesville.  They further aver that the
"Polish Club" located across the street from JB's Web is not
"harassed or bullied",[39] or issued citations on a regular basis,
as JB's Web and the Mhloyis allegedly are.[40]

Taking the factual averments in the Second Amended
Complaint as true and drawing all reasonable inferences in the
Mhloyis' favor, as I am required to do by the applicable standard
of review, I conclude that they have sufficiently alleged that
similarly situated individuals outside of the protected class
were treated differently.  Plaintiffs have alleged that the
Polish Club, which the Coatesville Chief of Police and his
assistants frequent, did not, and does not, receive meritless
citations for noise violations as the Mhloyis and JB's Web do.

Moreover, the Mhloyis allege that their bar is the only
"black bar" in Coatesville and that none of the other drinking

---

[39]    Second Amended Complaint, ¶ 21.

[40]    <u>Id.</u> at ¶¶ 8, 10, and 18-21.

establishments in Coatesville are harassed and bullied as the Mhloyis claim to be.

Determining whether an individual is "similarly situated" to another individual is a case-by-case fact-intensive inquiry.  <u>Monaco v. American General Assurance Co.</u>, 359 F.3d 296, 305 (3d Cir. 2004)

At this stage of the litigation, and accepting plaintiffs' facts as true, their allegations that similarly situated bars in the City of Coatesville were treated differently than the Mhloyi's bar, JB's Web, are sufficient to satisfy the discriminatory treatment element of the Mhloyis' equal protection claim.  Accordingly, I deny defendants' motion to dismiss the Mhloyis' section 1983 equal protection claim from Count II of the Second Amended Complaint.

<u>Section 1985 Equal Protection Conspiracy Claim</u>

Moving Defendants seek to dismiss from Count II of the Second Amended Complaint, plaintiffs' equal protection conspiracy claim, asserted under 42 U.S.C. § 1985.  Under the facts averred in the Second Amended Complaint, and for the reasons expressed below, I conclude that plaintiffs have not sufficiently stated such a claim.  Accordingly, I grant Moving Defendants' motion and dismiss the Mhloyis' section 1985 claim from Count II with prejudice.

The Second Amended Complaint does not identify the particular provision of section 1985 upon which the Mhloyis base their claim.  However, it appears that the Mhloyis intend to assert a claim pursuant to section 1985(3).[41]  Section 1985(3) provides a private cause of action for damages incurred "[i]f two or more persons...conspire...for the purpose of depriving...any person of the equal protection of the laws".  42 U.S.C. § 1985(3).

In order to establish a claim for conspiracy under section 1985(3), a plaintiff must show the following elements:

> (1) a conspiracy; (2) for the purpose of
> depriving, either directly or indirectly, any
> person or class of persons of the equal protection
> of the laws, or of equal privileges and immunities
> under the laws; and (3) an act in furtherance of
> the conspiracy; (4) whereby a person is injured in
> his person or property or deprived of any right or
> privilege of a citizen of the United States.

Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006).

A conspiracy -- an agreement to commit an unlawful act -- is a necessary element of a claim under section 1985.  Gordon v. Lowell, 95 F.Supp.2d 264, 270 (E.D.Pa. 2000)(Van Antwerpen, J.).  "An allegation of conspiracy is insufficient to sustain a cause of action under [section 1985]; it is not enough to use the

---

[41]   Neither section 1985(1) ("Preventing officer from performing duties") nor § 1985(2) ("Obstructing justice; intimidating party, witness or juror") appears to apply here.

-28-

term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement."  Id.

Although section 1985(3) applies to private conspiracies, it "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'"  Farber, 440 F.3d at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971)).

Thus, because section 1985(3) requires "the intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim.  Farber, 440 F.3d at 135 (quoting Griffin, supra).

Moreover, for purposes of section 1985(3), a municipality and its officials are considered a single entity which cannot conspire with itself.  Doherty v. Haverford Township, 513 F.Supp.2d 399, 409 (E.D.Pa. 2007)(Strawbridge, J.) (citing Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 (3d Cir. 1988), and Aardvark Childcare & Learning Center, Inc. v. Township of Concord, 401 F.Supp.2d 427, 450 (E.D.Pa. 2005)(Giles, J.)).  A municipality is "not capable of possessing the invidious discriminatory animus or motive required to successfully maintain

an action under § 1985(3)."  Scott v. Township of Bristol,
1990 WL 178556, at *6 (E.D.Pa. November 14, 1990)(Hutton, J.).

        Nonetheless, under the intracorporate conspiracy
doctrine, a section 1985(3) conspiracy between a municipality and
one of its employees may be maintained to the extent that
liability is asserted against the employee in his individual,
rather than official, capacity.  See Scott, 1990 WL 178556,
at *6.  However, a municipality may not be held liable for its
employees' violations of section 1985 under a theory of
respondeat superior.  See Simril v. Township of Warwick,
2001 WL 910947, at *2 n.5 (E.D.Pa. August 10, 2001)(Kelly,
Robert F., S.J.)(citing DiMaggio v. O'Brien, 497 F.Supp. 870, 876
(E.D.Pa. 1980)(Lord, C.J.)).[42]

        Because a municipality may not conspire with itself,
see Doherty, supra, plaintiff's section 1985(3) claim is viable
only to the extent that he alleges facts to support a conclusion
that the municipality conspired with a municipal employee acting
in his individual capacity.  See Scott, supra.

---

        [42]    "[T]he Monell analysis that liability under § 1983 cannot be
predicated on respondeat superior applies with equal force to § 1985."
DiMaggio, 497 F.Supp. at 875-876.

As discussed above, plaintiffs do assert that the alleged conspiracy was based on their membership in a protected class, as required under Griffin, supra.

However, even to the extent that defendant Officers are sued in their individual capacities, the Mhloyi Plaintiffs have not alleged any actions by defendant Officers which show, or support a reasonable inference of an agreement among defendant Officers to violate the Mhloyis' equal protection rights.

Thus, the Mhloyis have not sufficiently pled the existence of a conspiracy by averring facts demonstrating an agreement to commit an unlawful discriminatory acts for purposes of the first Farber factor.  Farber, 440 F.3d at 134; Gordon, 95 F.Supp.2d at 270.

Accordingly, I grant defendants' motion to dismiss the Mhloyis' section 1985 claim in Count II against defendant Officers Wright, Keuch, Ingemie, Miller, Simpkins, and The City of Coatesville, with prejudice.

Even if I were not to grant Moving Defendants' motion concerning the Mhloyis' section 1985 claim on the merits, I would alternatively, grant the motion to dismiss as unopposed with respect to that claim.

Under Local Rules of the United States District Court for the Eastern District of Pennsylvania Rule 7.1, "[i]n the

absence of timely response, the motion may be granted as uncontested, except as provided under Fed.R.Civ.P. 56."[43]

In plaintiffs' response in opposition to the Moving Defendants' motion to dismiss, the Mhloyis do not address Moving Defendants' motion concerning the Mhloyis' section 1985 claim or provide any legal authority, or explanation, demonstrating how the averments in the Second Amended Complaint state such a claim.

Consequently, the motion to dismiss the Mhloyis' section 1985 claim against defendant Officers Wright, Keuch, Ingemie, Miller, and Simpkins, and The City of Coatesville in Count II, is also granted as uncontested.

### Statute of Limitations

Moving Defendants seek to dismiss the Mhloyis' claims based on conduct which occurred prior to June 30, 2008 because, defendants contend, these claims are barred by the applicable statute of limitations.

Section 1983 does not include a relevant statute of limitations.  See 42 U.S.C. § 1983.  To ascertain the applicable statute of limitations for an action pursuant to section 1983, the district courts must rely on 42 U.S.C. § 1988, which requires the federal courts to apply the statute of limitations for the

---

[43]    Fed.R.Civ.P. 56 pertains to motions for summary judgment. The motion at issue here is a Rule 12(b)(6) motion to dismiss. Therefore, this exception does not apply.

state in which the court sits unless applying that state's statute of limitations would conflict with the United States Constitution or federal law. 42 U.S.C. § 1988; <u>Lake v. Arnold</u>, 232 F.3d 360, 368 (3d Cir. 2000).

The United States Supreme Court has stated that courts should apply the state statute of limitations applicable to personal injury actions for purposes of a civil rights action under section 1983,. <u>Wilson v. Garcia</u>, 471 U.S. 261, 276-279, 105 S.Ct. 1938, 1947-1949, 85 L.Ed.2d 254, 267-269 (1985). Pennsylvania's statute of limitations period for personal injury actions is two years. 42 Pa.C.S.A. § 5524(7).

Under federal law, the statute of limitations begins to run from the time when the plaintiff knows, or has reason to know, of the injury. <u>Gibson v. Superintendent of New Jersey Department of Law and Public Safety</u>, 411 F.3d 427, 435 (3d Cir. 2005); <u>Oshiver v. Levin, Fishbein, Sedran, & Berman</u>, 38 F.3d 1380, 1386 (3d Cir. 1993).

However, the United States Court of Appeals for the Third Circuit has recognized that the applicable statute of limitations may be extended in certain circumstances.  The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Electric Company</u>, 45 F.3d 744, 754 (3d Cir. 1995).

Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Cowell v. Palmer Township, 263 F.3d 286 (3d Cir. 2001) (citing Brenner v. Local 514, United Broth. of Carpenters and Joiners of America, 927 F.2d 1283, 1295 (3d Cir. 1991)). If the doctrine applies, "the court will grant relief for the earlier related acts that would otherwise be time barred." Id.

In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." United States v. Cowell, 263 F.3d 286, 292 (3d Cir. 2001)(internal quotations omitted).  When determining whether the continuing wrong doctrine applies, courts consider three factors: subject matter, frequency, and permanence.  Cowell, 263 F.3d at 292-293.  The degree of permanence is the most important of the factors.  Id.

The Mhloyis argue that the actions taken by defendant Officers prior to June 30, 2008 (this action was initiated June 30, 2010) are not time barred because the continued violation doctrine applies in this case.

The gravamen of plaintiffs' allegations in Count II of the Second Amended Complaint is that it is a custom of The City of Coatesville's police officers to issue meritless noise

violation citations against JB's Web because the bar's owners (the Mhloyis), employees, and patrons are exclusively African American.

In Count II, the Mhloyis further allege that Officers Wright, Keuch, Ingemie, Miller, and Simpkins issued meritless noise violations against JB's Web because of the race of its owners (the Mhloyis), employees, and patrons, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff's further allege that the issuance of these meritless citations against the Mhloyis' bar was done in accordance with an alleged custom of The City of Coatesville.

The actions allegedly taken by defendant Ingemie in violation of plaintiffs' rights are the issuance of a number of noise violations in 2007, the issuance of at least seven citations between January 15, 2008 and September 15, 2008, and the placement of JB's Web on the "nuisance bar list" sometime in 2007 and 2008.

The sole action allegedly taken by defendant Simpkins in violation of plaintiffs' rights, was the filing of a nuisance-bar claim for loud noise on October 8, 2008.

Although Officer Wright issued a number of citations and incidents reports for noise violations on April 9, 2008, the

Mhloyis do not alleged that Officer Wright took any action whatsoever after April 9, 2008 -- more than two years and two months prior to June 30, 2010 initiation of this action.

As discussed previously, there are no factual allegations of conspiracy or agreement between the individual defendants named in Count II.  Plaintiffs' section 1985 conspiracy claim was consequently dismissed.

Because the Mhloyis have not pled a conspiracy, Officer Wright may not be held liable for any actions taken by his purported co-conspirators on or after June 30, 2008.  Accoringly, the Mhloyis' claims against defendant Wright are barred by the statute of limitations because defendant Wright is not alleged to have personally taken any action in violation of plaintiffs' rights after June 30, 2008.

By contrast, Officer Miller filed a public drunkenness/open bottle violation on September 4, 2008. Officer Simpkins filed a nuisance bar claim purportedly based upon excessive noise on October 8, 2008.  Officer Keuch allegedly filed a citation against the Mhloyis and JB's Web for an incident which did not occur in the bar on November 12, 2008 .

Defendants Miller, Simpkins, and Keuch's allegedly-discriminatory actions happened within the statute of limitations

period.  Therefore, the statute of limitations does not bar plaintiffs' claims against those three Officers.

Finally, Officer Ingemie is alleged to have issued meritless citations and complaints against the Mhloyis and JB's Web throughout 2007 and into September, 2008.  Thus, the last alleged act evidencing Officer Wright's continuing practice falls within the limitations period.  Therefore, accepting all factual allegations in the Second Amended Complaint as true and drawing all reasonable inferences in the Mhloyis' favor, the continuing violation doctrine prevents dismissal of the Mhloyis' claims against Officer Ingemie for his conduct which began prior to, but continued into, the applicable limitations period.

For these reasons, I grant defendants' motion to dismiss based on the statute of limitations with respect to Officer Wright only, and deny it with respect to Officers Keuch, Ingemie, Miller, and Simpkins.  Accordingly, I dismiss defendant Officer Wright as a party to this action, with prejudice.

<u>Qualified Immunity</u>

The defendant Officers seek to dismiss plaintiffs' section 1983 claims based on qualified immunity.  The defendant Officers contend that they are entitled to qualified immunity for two reasons: (1) defendant Officers did not violate any of the Mhloyis' rights by writing noise violation citations or other

complaints against the Mhloyis and JB's Web, and (2) a reasonable officer would not understand that what the defendant Officers allegedly did would constitute a violation of the Mhloyis constitutional rights.

The Mhloyis contend that the defendant Officers are not entitled to qualified immunity because they mistreated the Mhloyis based on the color of the Mhloyis' skin, and, in doing so, violated the Mhloyis' clearly established constitutional rights.

The doctrine of qualified immunity protects government officials from individual liability for civil damages. "Qualified immunity shields state officials from suit when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Yarris v. County of Delaware, 462 F.3d 129, 140 (3d Cir. 2006)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)).

"Qualified [i]mmunity analysis gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991)).

The assessment of a government official's assertion of qualified immunity involves two steps: (1) "we must assess whether the facts alleged demonstrate that the state actor's conduct violated a constitutional right," and (2) we then "determine whether the violated right was 'clearly established.'" Egolf v. Witmer, 526 F.3d 104, 109 (3d Cir. 2008) (citing Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.ed.2d 272, 281 (2001), and Gilles, 427 F.3d at 203 (3d Cir. 2005)).

As discussed above, the facts alleged by plaintiffs demonstrate that the defendant Officers' conduct did not violate the Mhloyis' rights under the First or Fourth Amendments of the United States Constitution. Therefore, the officers would be entitled to qualified immunity with regards to plaintiffs' First and Fourth Amendment claims under section 1983 if those claims had not been dismissed above.[44]

---

[44]     Assuming, arguendo, that plaintiff had stated a claim that defendant Officers violated the plaintiffs' First Amendment rights, the second step in the analysis is to determine whether the violated right was clearly established. This requires me to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Egolf, 526 F.3d at 110 (citing Saucier, 533 U.S. at 202, 121 S.Ct. at 2156, 150 L.ed.2d at 282; Gilles, 427 F.3d at 203).

     Plaintiffs claims that their constitutionally protected First Amendment activity is the right to do business and associate with their black clientele.

     There is no express language in the First Amendment about a right to do business.  In addition, plaintiffs fail to cite any precedent showing that the right to do business is a First Amendment right.  Because this court was unable to find evidence of such constitutionally protected conduct, it is likely that a reasonable officer would not have known that such a right

(Footnote 44 continued):

However, as discussed above, the Mhloyis have sufficiently pled their claim that defendant Officers violated their rights under the Equal Protection Clause of the Fourteenth Amendment.  Accordingly, I must now determine whether the violation alleged by the Mhloyis was of a clearly established right.

To make that determination, I must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Egolf, 526 F.3d at 110 (citing Saucier, 533 U.S. at 202, 121 S.Ct. at 2156, 150 L.ed.2d at 282, and Gilles, 427 F.3d at 203).

Even where "officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles."  Acierno v. Cloutier, 40 F.3d 597, 620 (3d Cir. 1994)(citations and internal quotations marks omitted).

---

(Continuation of footnote 44):

existed.  Therefore, a First Amendment right to do business is not clearly established.

Because I conclude that this right is not clearly established and that a reasonable officer would not have known about it, I grant defendant Officers' motion to dismiss the section 1983 claim in Count II for violation of plaintiffs' First Amendment rights because defendant Officers are entitled to qualified immunity with respect to plaintiffs' First Amendment retaliation claim.  Accordingly, this claim is dismissed with prejudice.

However, for reasonable officials to be on notice that their conduct would be unlawful, there need not be a previous precedent directly on point.  <u>Acierno</u>, 40 F.3d at 620.

I conclude that, taken as true, the Mhloyis' averments establish that defendant Officers violated those plaintiffs' clearly established equal protection rights.  Specifically, plaintiffs allege that the defendant Officers issued baseless citations and noise violations against the Mhloyis' bar because the Mhloyis' are African American, and that those defendant Officers do not issue meritless citations against any of the other ("white") bars in Coatesville.

I also conclude that a reasonable officer would have been aware that this alleged conduct -- namely, issuing baseless citations against a business and its owners because the owners are African American -- would constitute a violation of the Mhloyis' clearly established equal protection rights, and, therefore, hold that defendant Officers are not entitled to qualified immunity concerning the Mhloyis' section 1983 equal protection claim, which has otherwise survived the within motion to dismiss.

<u>Monell Claim</u>

Lastly, defendants move to dismiss plaintiffs' claims in Count II against defendant The City of Coatesville on the

theory that The City of Coatesville, a municipality, cannot be
held liable under section 1983.

The Third Circuit Court of Appeals has stated that a
municipality cannot be held liable under the doctrine of
respondeat superior for the misconduct of its police. Andrews v.
City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

However, when a suit against a municipality is brought
under § 1983, the municipality can only be liable when the
alleged constitutional violation implements or executes a policy,
regulation or decision officially adopted by the municipality or
informally adopted by custom. Beck v. City of Pittsburgh,
89 F.3d 966, 971 (3d Cir. 1996) (citing Monell v. Department of
Social Services of the City of New York, 436 U.S. 658,
98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Thus, a municipality is subject to section 1983
liability only when "execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or
acts may fairly be said to represent official policy, inflicts
the injury." Andrews, 895 F.2d at 1480 (quoting Monell, 436 U.S.
at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638).

Municipal liability under § 1983 can arise in one of
two ways: a policy or a custom.  A municipality's policy "is made
when a decisionmaker possessing final authority to establish
municipal policy with respect to the action issues an official

proclamation, policy or edict." <u>Andrews</u>, 895 F.2d at 1480
(<u>quoting</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481,
106 S.Ct. 1292, 1299, 89 L.Ed.2d 452, 464 (1986))(internal
quotations omitted).  Alternatively, "a course of conduct is
considered to be a custom when, thought not authorized by law,
such practices of state officials are so permanent and well-
settled as to virtually constitute law."  <u>Id.</u> (internal
quotations omitted).

    The Mhloyis do not contend that The City of Coatesville
has adopted an official policy that violates their constitutional
right to equal protection. Rather, the Mhloyis contend that The
City of Coatesville has informally adopted a custom to harass the
Mhloyis by issuing baseless local ordinance citations and noise
violations against JB's Web because of the race of the bar's
owners (the Mhloyis), patrons, and employees.

    Taking these averred facts as true and drawing all
reasonable inferences in the light most favorable to the Mhloyis,
as I am required to do by the applicable standard of review, I
conclude that plaintiffs have sufficiently alleged that The City
of Coatesville had a custom of issuing citations and noise
violations against the Mhloyis and JB's Web based on the Mhloyis'
race.

    The Mhloyis allege that the evidence of defendant The
City of Coatesville's custom is the repeated and continuous

issuance of meritless, race-based citations by Coatesville police officers against JB's Web.

Plaintiffs' allegations support a reasonable inference that the defendant Officers' issuance of allegedly meritless citations and contact with the bar was so numerous and frequent so as to constitute a custom of defendant The City of Coatesville.

Therefore, I conclude that plaintiffs have stated a plausible Monell claim against defendant The City of Coatesville for violation of plaintiffs' right to equal protection of the laws under the Fourteenth Amendment.

Accordingly, because plaintiffs have adequately pled a custom of The City of Coatesville which violates the Mhloyis' equal protection rights and that their rights were violated by the City's Police Officers acting pursuant to that custom, I deny defendants' motion to dismiss the Mhloyis' section 1983 equal protection Monell in Count II against defendant The City of Coatesville.

**CONCLUSION**

For the reasons stated above, I grant in part and deny in part the Moving Defendants' motion to dismiss. Specifically, I grant the motion and dismiss the Mhloyis' claims for First Amendment retaliation and violation of their Fourth Amendment

-44-

rights from Count II of the Second Amended Complaint, with prejudice.

In addition, I grant the defense motion to the extent it seeks to dismiss the Mhloyi Plaintiffs' equal protection conspiracy claim against the Moving Defendants under 42 U.S.C. § 1985 because plaintiffs failed to plead facts supporting a reasonable inference of an agreement to violate plaintiffs' equal protection rights and, alternatively, because plaintiffs failed to respond to that portion of the within motion.

Moreover, based on the statute of limitations, I grant the defense motion to dismiss and dismiss all of the Mhloyis' claims against Officer Wright.  Accordingly, I dismiss defendant Wright as a party to this action, with prejudice.  In all other respects, I deny the motion to dismiss.

As a result, the only remaining claims in the Second Amended Complaint are (1) all of the claims of plaintiff Ronnie Suber in Count I against defendant Jon Guinta for violation of plaintiff's First, Fourth, and Fourteenth Amendment rights, brought pursuant to 42 U.S.C. §§ 1983 and 1985; and (2) the claims of plaintiffs Bongai Mhloyi and Jeremiah Mhloyi in Count II against defendant Officers Keuch, Ingemie, Miller, and Simpkins, and defendant The City of Coatesville for violation of plaintiffs' Fourteenth Amendment rights to equal protection of the law, brought pursuant to 42 U.S.C. § 1983.